**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| CRST EXPEDITED, INC., <br><br> Plaintiff, <br><br> vs. <br><br> J.B. HUNT TRANSPORT, INC., <br><br> Defendant. | No. 17-CV-26-CJW <br><br> **ORDER** |

_____

TABLE OF CONTENTS

I.   Background ………………………………………………………………………… 2

II.  Applicable Law ……………………………………………………………………… 4

  A.  Motion to Dismiss for Failure to State a Claim …………………………………. 4

  B.  Motion for a More Definite Statement …………………………………………… 5

  C.  Venue ……………………………………………………………………………… 6

III. Discussion…………………………………………………………………………… 7

  A.  Motion to Dismiss for Failure to State a Claim …………………………………. 8

  B.  Motion for a More Definite Statement…………………………………………… 13

  C.  Venue……………………………………………………………………………… 14

IV.  Conclusion………………………………………………………………………… 16

This matter is before the Court on J.B. Hunt Transport's ("defendant") Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6), for a More Definite Statement Pursuant to FED. R. CIV. P. 12(e), and to Dismiss for Lack of Proper Venue Pursuant to FED. R. CIV. P. 12(b)(3). (Doc. 8). CRST Expedited ("plaintiff") filed its Complaint ("complaint") against defendant (Doc. 2), and defendant timely filed the instant motion as its first responsive pleading. (Doc. 8). Plaintiff timely resisted the motion (Doc. 12), and defendant timely filed a reply. (Doc. 15). For the following reasons, defendant's motion is **granted in part and denied in part**.

## I. BACKGROUND[1]

Plaintiff alleges it is a trucking company based in Cedar Rapids, Iowa, that provides "long-haul, expedited freight hauling services to its customers." (Doc. 2, at 1-2). To facilitate its business, plaintiff alleges that it has established a driver training program wherein plaintiff incurs substantial expense in training individuals to become licensed truck drivers. (*Id.*, at 2). In return, plaintiff alleges that the participants of the program agree to a specific employment term with plaintiff, during which time the participants may not provide truck driving services to any of plaintiff's competitors. (*Id.*, at 2-3).

Plaintiff further alleges that defendant is a transportation and logistics company based in Arkansas that does not operate a driver training program and is incorporated under the laws of the State of Georgia, but is authorized to do business in Iowa and maintains offices in the State of Iowa. (*Id.*, at 1, 4). Further, plaintiff states that defendant "actively recruits drivers nationwide, including the State of Iowa." (*Id.*, at 4).

---

[1] The undersigned is presiding over two companion cases to the instant case: *CRST Expedited, Inc. v. Knight Transportation, Inc.*, 17-CV-24-CJW, and *CRST Expedited, Inc. v. Swift Transportation Co of Arizona, LLC*, 17-CV-25-CJW. Because of the similarities between the three cases, there is a degree of factual overlap between the cases.

In 2004, plaintiff sued defendant in the United States District Court for the Western District of Oklahoma because defendant allegedly solicited and hired plaintiff's drivers, causing those drivers to breach their employment contracts with plaintiff. (*Id.*). That case ultimately settled and, as a condition of the settlement agreement, defendant allegedly "agreed that it would not solicit or hire any CRST driver" during the restrictive period of the driver's employment contract. (*Id.*). Plaintiff claims, however, that since September 2015, when the settlement agreement expired, defendant "has actively recruited CRST drivers who were within" the restrictive periods of their contracts. (*Id.*). Plaintiff alleges that the previous litigation in the Western District of Oklahoma vested defendant with "knowledge both of the existence of the Employment Contract and its terms, including CRST's investment in its Driver Training Program." (*Id.*, at 5).

Plaintiff claims that in complying with Department of Transportation regulations requiring trucking companies to verify employment history prior to hiring drivers, defendant became aware that certain individuals it hired were still within the exclusivity period with plaintiff. (*Id.*, at 5). Specifically, upon receipt of an employment verification request from defendant, plaintiff contends that it would send a letter to defendant stating that the individual that defendant was recruiting was still within the exclusivity period and that plaintiff was not releasing the individual from his or her contract with plaintiff. (*Id.*). Plaintiff, however, contends that defendant hired the subject individuals in spite of this notification. (*Id.*). As a result, plaintiff contends that it suffered damages, continues to suffer damages, and that defendant has been unjustly enriched by being permitted to benefit from plaintiff's driver training program.

Plaintiff brought a four-count complaint alleging: 1) intentional interference with prospective economic advantage; 2) unjust enrichment; 3) intentional interference with contract; and 4) requesting permanent injunctive relief. (Doc. 2). In response, defendant brought a motion to dismiss for failure to state a claim upon which relief can be granted

under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e), and to dismiss for lack of venue under Rule 12(b)(3). (Doc. 8). With respect to defendant's Rule 12(b)(6) motion, defendant alleges specific arguments for dismissal of the intentional interference with prospective economic advantage and intentional interference with contract claims, and brings an overarching argument for dismissal of the complaint in its entirety. (Doc. 8-2).

## II. APPLICABLE LAW

### A. *Motion to Dismiss for Failure to State a Claim*

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought." Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* at 555-56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the

pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Where a pleading contains no more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester, Mass.*, 108 F.2d 302, 306 (8th Cir. 1940).

### B.     *Motion for a More Definite Statement*

Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

In granting a Rule 12(e) motion, a court "may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish [the claims alleged] in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)). "A motion under Rule 12(e) is designed to strike at unintelligibility in a pleading rather than want of detail." *Cmty. Voiceline, L.L.C. v. Great Lakes Commc'n Corp.*, No. C 12-4048-MWB, 2013 WL 417749, at *4 (N.D. Iowa Feb. 1, 2013) (internal quotations and citations omitted). Further, "a motion for more definite statement is only proper when a party is unable to determine the issues

he must meet." *Innovative Dig. Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 988 (N.D. Ohio 1984) (citing *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534 (D. Del. 1962)). A motion for a more definite statement is not to be used as a substitute for discovery. *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996).

"Rule 12(e) motions are generally disfavored '[b]ecause of the liberal notice-pleading standard governing federal pleadings and the availability of extensive discovery[.]'" *Am. Cas. Co. of Reading v. Chang*, No. 14-00494-CV-W-BP, 2014 WL 12535303, at *2 (W.D. Mo. Nov. 26, 2014) (alterations in original) (quoting *Ransom v. VFS, Inc.*, 918 F. Supp.2d 888, 901 (D. Minn. 2013). A "very limited" number of situations, however, may properly implicate Rule 12(e). *Rutter v. Carroll's Foods of Midwest, Inc.*, 50 F. Supp.2d 876, 887 (N.D. Iowa 1999) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1377 (1990)). "'[T]he judge may in his discretion, in response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e), require such detail as may be appropriate in the particular case, and may dismiss the complaint if his order is violated.'" *Rutter*, 50 F. Supp.2d at 887 (quoting *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)).

### C. Venue

Section 1391(b) reads as follows:[2]

(b) Venue in General.—A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

---

[2] The parties do not allege that venue may be proper under Section 1391(b)(3). Thus, the Court will not consider whether venue may be proper under this Section.

28 U.S.C. § 1391(b)(1)-(2). Plaintiff further argues that defendant conceded personal jurisdiction by failing to argue that this Court lacked personal jurisdiction over defendant, thereby waiving its right to challenge venue under 28 U.S.C. § 1391(b)(1). (Doc. 12, at 3).

> In most instances, the purpose of statutorily specific venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial. . . . So long as the plain language of the statute does not open the severe type of "venue gap" that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly on behalf of plaintiffs.

The United States Supreme Court has directly addressed the issue of venue:

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 184 (1979). Further, the Supreme Court held that "it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id.* at 184-85.

"When reviewing a Rule 12(b)(3) motion to dismiss for improper venue, the Court applies the same standard used for other motions to dismiss. The Court must view all facts and resolve all conflicts in a manner most favorable to the plaintiff, and the defendant, as the movant, has the burden of establishing that the venue is improper." *Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp.2d 959, 963 (8th Cir. 2010) (internal citations omitted). When considering a Rule 12(b)(3) motion, however, "the [C]ourt may consider matters outside the pleadings." *Spanier v. Am. Pop Corn Co.*, No. C15-4071-MWB, 2016 WL 1465400, at *10 (N.D. Iowa Apr. 14, 2016).

### III. DISCUSSION

The Court finds it appropriate to address the prior litigation as a preliminary matter. Although plaintiff urges "the litigation history between [the parties] invites emphasis of

an additional consideration," plaintiff is mistaken. (Doc. 2, at 1-2). The proceedings in the prior litigation have no bearing on the instant case at this stage. Plaintiff suggests that the prior litigation put defendant on notice as to the wrongfulness of its conduct and very nearly suggests that the issues have already been litigated and defendant's conduct has already been found improper, but defendant insists on carrying on with such wrongful conduct anyway. Even if true, these allegations would not lend support to the propositions for which they are offered.

Plaintiff's discussion of the prior litigation is applied only to the Rule 12(b)(6) issue. In considering a Rule 12(b)(6) motion, however, the Court is limited to considering only those claims appearing within the four corners of the complaint; should the Court consider outside material, it should convert the 12(b)(6) motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Eiras v. Florida*, 239 F. Supp.3d 1331, 1341 (M.D. Fla. 2017). Thus, although the prior litigation may be relevant for other purposes, the prior litigation may not be considered in assessing the Rule 12(b)(6) motion. The Court recognizes that it could consider the prior litigation and convert the Rule 12(b)(6) motion to a motion for summary judgment, but to do so at this early stage would be premature. As a result, the Court will treat the Rule 12(b)(6) motion in the manner it is presented and will, therefore, not consider the prior litigation in assessing the sufficiency of the complaint.

### A.   *Motion to Dismiss for Failure to State a Claim*

Ordinarily, the Court would first address the preliminary question of whether venue in the Northern District of Iowa is proper. Here, however, defendant's argument regarding improper venue hinges on whether plaintiff's complaint is sufficiently pled to survive a Rule 12(b)(6) motion. (Doc. 8-2, at 19). Thus, the Court will first turn to defendant's Rule 12(b)(6) motion, then to defendant's Rule 12(e) motion, then, finally,

will consider whether the Northern District of Iowa is a proper venue for the instant litigation.

As an initial matter, plaintiff contends that defendant only seeks to defeat plaintiff's claims for intentional interference with prospective economic advantage and intentional interference with contract. The Court, however, disagrees. Although defendant only *specifically* addresses the interference claims, defendant advances an overarching argument with respect to the complaint as a whole. Defendant alleges that plaintiff's complaint must fail in its entirety because plaintiff failed to plead: 1) the specific drivers and contracts defendant allegedly interfered with; 2) the alleged acts of interference; 3) the location where any alleged acts of interference occurred; or 4) the location of the drivers involved in the alleged interference. (Doc. 8-2, at 7).

### 1. Overarching Arguments

The Court will turn first to defendant's overarching arguments to determine whether the lack of the four elements listed above is sufficient to defeat plaintiff's complaint.[3] Each of the four elements that defendant argues was impermissibly lacking deals with the specifics of the tortious interference defendant allegedly committed. The question may be boiled down to one that, instead, addresses just how much detail a complaint must allege to survive a Rule 12(b)(6) motion. The Court addressed a similar issue in one of the companion cases, *CRST v. Swift*, 17-CV-25-CJW, Doc. 42, and the Court finds the same rationale to be instructive here.

It is not inconceivable that a situation could present itself wherein a plaintiff believes a defendant has committed *some* improper conduct but is unable to discover the nature or extent of that conduct without proceeding to discovery. Defendant's theory

---

[3] The use of the conjunctive "or" indicates that defendant would not challenge the complaint as insufficiently pled if any one of the four elements listed were alleged in the complaint. The Court need not determine whether this methodology is correct. The Court may, instead, simply show that none of the four elements need be alleged for plaintiff's complaint to survive.

would suggest that such a case should be dismissed under Rule 12(b)(6) because the exact improper conduct, and the details of that improper conduct, cannot be alleged. To do so would be to allow a clever defendant to perpetuate its improper conduct without fear of liability. When a plaintiff does not know the exact conduct engaged in that was improper, that plaintiff may likewise be unable to detail the "who, what, and where" of the improper conduct. Defendant now seeks the "who, what, and where" information that plaintiff may be unable to provide. This is information that may be sought during discovery, should such requests be proper.

Defendant alleges only generally that the omission of the four elements was improper. Without tying the four elements to a specific claim, the Court is at a loss as to how defendant contends the four elements cause the complaint to fail. Further, the Court is required to construe the pleadings in the light most favorable to plaintiff. In the absence of specific allegations tying the four elements to any cause of action, the Court is unable to find that the bare absence of these elements—which will likely be discoverable—is fatal to the complaint.

### 2. *Intentional Interference with Prospective Economic Advantage and Intentional Interference with Contract*

Although the Court is not prepared at this time to determine which body of substantive law applies to the tortious interference claims, defendant challenges the complaint based on Iowa law. (Doc. 8-2, at 11). The Court is to consider whether the complaint would survive a Rule 12(b)(6) motion "under any state of facts which could be proved in support of the claim." *Leimer*, 108 F.2d at 306. Because Iowa law could be proven to govern the claims at issue and because the assumption that Iowa law, *in*

*arguendo*, applies is dispositive of the Rule 12(b)(6) issue, the Court will apply Iowa law for the sole purpose of determining the sufficiency of the complaint under Rule 12(b)(6).[4]

Under Iowa law, a claim of interference with prospective economic advantage consists of the following elements: 1) the plaintiff had a prospective contractual or business relationship; 2) the defendant knew of the prospective relationship; 3) the defendant intentionally and improperly interfered with the relationship; 4) the defendant's interference caused the relationship to fail to materialize; and 5) the amount of resulting damages. *Gen. Elec. Capital Corp. v. Commercial Servs. Grp., Inc.*, 485 F. Supp.2d 1015, 1025 (N.D. Iowa 2007). A claim of intentional interference with an existing contract is comprised of the following elements: 1) the plaintiff had a valid contractual relationship with a third party; 2) the defendant knew of that relationship; 3) the defendant intentionally interfered with that relationship; 4) the defendant's action caused the third party to breach its contractual relationship with the plaintiff by making performance more burdensome or expensive; and 5) the amount of damages. *Id.*

Defendant argues that "[i]n order to pursue its claims against [defendant], [plaintiff] must know which contracts or drivers are at issue." (Doc. 8-2, at 16). Further, defendant claims that this information must be pled in order for plaintiff's tortious interference claims to survive defendant's Rule 12(b)(6) motion. (*Id.*, at 11-16). Defendant sets forth no other argument to defeat either of the tortious interference claims. Thus, defendant's only argument for defeating the tortious interference claims, aside from the overarching arguments discussed above, is that plaintiff failed to plead the exact contracts or drivers at issue. The exact contracts or drivers at issue, however, need not be named or identified in the complaint.

---

[4] This assumption is for the purposes of considering the instant motion *only* and should not be viewed as a determination of which body of law applies.

This Court has previously found that a plaintiff need not name the parties with whom it allegedly had contractual relations, as long as "'an identifiable class of third persons'" is ascertainable from the complaint. *Hawkeye Land Co. v. ITC Midwest LLC*, 125 F. Supp.3d 885, 894 (N.D. Iowa 2015) (quoting *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 934 F. Supp.2d 1026, 1049 (N.D. Iowa 2013)). Here, an identifiable class of third persons is nearly ascertainable. Though plaintiff did not name each of the drivers defendant allegedly wrongfully recruited away from plaintiff, plaintiff states that the relationships allegedly interfered with those drivers whose employment histories were verified with plaintiff by defendant and were later hired by defendant while still within the restrictive terms of their contracts. (Doc. 2, at 5-9). Defendant should be able to determine the drivers for whom it requested employment verification and should, further, be able to identify the specific drivers it subsequently hired. Thus, the identities of all possible drivers at issue are available to defendant.

Plaintiff fails, however, to identify the time period at issue. The only reference to a date in the complaint appears in the factual background section: "Preliminary investigation revealed that in 2016 CRST received approximately 600 such employment verification requests from J.B. Hunt for drivers who were within the 10-month Restrictive Term of their individual contracts." (Doc. 2, at 5). Without providing at least some indication of the time period at issue, one is left to wonder whether plaintiff intends to pursue its claims against defendant dating all the way back to the foundation of the companies at issue. Although identifying all of plaintiff's drivers who were ever allegedly poached could constitute an identifiable class of third persons, the Court is unwilling to conclude from the complaint that plaintiff's complaint is based on every driver ever allegedly poached. There is no indication that plaintiff intends to pursue its claims dating back to the foundations of the companies. Indeed, plaintiff's reference to 2016 is only to show that in 2016 alone, plaintiff received approximately 600 employment verification

requests. (Doc. 2, at 5). This statement, however, only creates more guesswork for both defendant and the Court. The Court thus finds that plaintiff has failed to show that an identifiable class of third persons is at issue. In reading the complaint liberally, however, the Court is able to determine that a set of facts exists under which a claim for relief would be possible. Specifically, *inter alia*, plaintiff may be considered to be seeking relief for all claims that have not been extinguished by the applicable statute of limitations, or plaintiff may be seeking relief for only those relationships allegedly interfered with in the year 2016. Either way, plaintiff would be able to obtain relief if it were able to prove the facts alleged.

As a final matter, defendant turns to Iowa's model jury instructions to support the proposition that plaintiff must name each of the contractually obligated drivers whom defendant allegedly wrongfully poached. This argument, however, ignores the vast differences between the current stage of the litigation and the stage at which jury instructions become relevant. Although defendant argues that plaintiff should not need discovery to provide the identities of the drivers at issue, the Court cannot reach this conclusion as readily. Therefore, defendant's Rule 12(b)(6) motion is **denied**.

### B. *Motion for a More Definite Statement*

The Court does find it proper, however, to **grant** defendant's Rule 12(e) motion for a more definite statement. Defendant's motion for a more definite statement is limited. Defendant requests only that the Court order plaintiff "to amend the [c]omplaint to identify the specific contracts and drivers it claims that [defendant] has interfered with." (Doc. 8-2, at 17). As shown above, defendant should be able to identify which drivers it allegedly poached based on the claims set forth in the complaint. Absent an applicable time period, however, defendant would largely be required to guess as to which drivers are at issue. Such guesswork may make it nearly impossible for defendant "to determine the issues [it] must meet." *Innovative Dig. Equip., Inc.*, 597 F. Supp. at

988 (citing *Fischer & Porter Co.*, 31 F.R.D. 534). The Court, however, recognizes that plaintiff may not have access to the identities of all of the drivers defendant ultimately hired.[5]

Therefore, the Court orders plaintiff to either 1) provide the identities of the drivers and contracts at issue; or 2) provide the exact time period upon which plaintiff rests its claims for tortious interference. Plaintiff's amended complaint is due by **April 9, 2018**. Defendant is directed to submit its answer by **April 30, 2018**.

### C. Venue

The final issue the Court must confront is whether defendant has met its burden of showing that the Northern District of Iowa is an improper venue for the instant suit. *See Safco Prods. Co.*, 730 F. Supp.2d at 963 (providing that where a defendant moves for dismissal based on improper venue, the defendant bears the burden of proving its claim). Defendant recognizes that in seeking dismissal under Rule 12(b)(3), a defendant "usually must submit affidavits or other evidence defeating venue in the chosen forum." (Doc. 8-2, at 19). Defendant goes on to state that it did not submit such supporting evidence because plaintiff "wholly fail[ed] to identify the contracts at issue," which put defendant "in the untenable position of trying to make [plaintiff's] case for [it]." (*Id.*). Finally, defendant asserts that the complaint's alleged deficiencies left defendant unable

---

[5] Defendant argues that plaintiff "should be keenly aware of the specific drivers and contracts at issue," and if plaintiff is not so aware, the filing of the complaint is a violation of Federal Rule of Civil Procedure 11 because plaintiff will not have met its "obligations . . . to represent to the Court that the factual allegations have evidentiary support." (Doc. 8-2, at 13-14). This, however, does not fairly represent the entirety of the Rule. Rule 11 provides that an attorney's signature—or an unrepresented party's signature—on a pleading indicates that "the factual contentions [contained therein] have evidentiary support or . . . *will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*." FED. R. CIV. P. 11 (emphasis added). As a result, a plaintiff need not possess all of the evidentiary support necessary to pursue its claims at the time it files its complaint. It is sufficient that the filer certify "that to the best of the person's knowledge, information, and belief," that such information will later be revealed through investigation or discovery. *Id.*

"to fully argue whether the events giving rise to this claim occurred in this District or elsewhere." (*Id.*). Plaintiff, in turn, argues that where a defendant waives its right to object to personal jurisdiction, it likewise waives its right to object to venue. (Doc. 12, at 15-18). Here, because defendant does not object to personal jurisdiction, plaintiff reasons that defendant may not claim that the Northern District of Iowa is an improper venue for the instant litigation. (*Id.*).

The Court has determined that the complaint does not set forth a sufficiently identifiable class of third persons. Because the individuals and contracts at issue are not wholly identifiable, defendant correctly asserts that it is not in a position to determine whether venue is proper in the Northern District of Iowa. (*See id.* ("[Defendant] is not in a sufficient position to fully argue whether the events giving rise to this claim occurred in this District or elsewhere, because [plaintiff's c]omplaint is woefully deficient.")). Inherent in this statement, however, is the concession that the Northern District of Iowa *could* be the proper venue—defendant simply lacks the information to determine whether venue is proper. Where a defendant bears the burden to establish improper venue, and is unable to meet that burden due to a complaint's deficiencies, it does not automatically follow that a complaint must be dismissed. Thus, the Court will not presently dismiss the complaint for improper venue.

By this Order, the Court is requiring plaintiff to provide a more definite statement pursuant to Rule 12(e). Plaintiff is further directed to provide such information as would allow defendant to determine the contracts and individuals at issue, which, under defendant's logic, should permit defendant to determine whether the Northern District of Iowa is an appropriate venue for the instant suit. If, upon review of plaintiff's amended complaint, defendant believes that the Northern District of Iowa is an improper venue, defendant may move to dismiss for lack of venue, either in its answer or in its first responsive pleading to the amended complaint. At this time, the Court need not reach

the issue of whether a waiver of personal jurisdiction equates to consent to proceed in a certain venue.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6), for a More Definite Statement Pursuant to FED. R. CIV. P. 12(e), and to Dismiss for Lack of Proper Venue Pursuant to FED. R. CIV. P. 12(b)(3) (Doc. 8), is **granted in part and denied in part**. Plaintiff is directed to file its amended complaint by **April 9, 2018**. Defendant is directed to submit its answer by **April 30, 2018**.

**IT IS SO ORDERED** this 15th day of March, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa